UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Chelan Lasha,

        Plaintiff

v.

William Cosby, Jr.,

        Defendant

Case No. 2:24-cv-00214-CDS-NJK

**Order Granting in Part Defendant's Motion to Dismiss and Affirming in Part the Magistrate Judge's Order**

[ECF Nos. 16, 33]

      Defendant William Cosby, Jr. moves to dismiss plaintiff Chelan Lasha's complaint. Mot. to dismiss, ECF No. 16. Relevant to this motion, Lasha seeks to recover from Cosby for an alleged sexual assault that occurred in 1986 when Lasha was a seventeen-year-old minor. Compl., ECF No. 1 at 3–6. She raises claims for sexual abuse and sexual exploitation of a minor under Nevada Revised Statute (NRS) § 11.215, battery, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment, seeking compensatory and punitive damages under each claim. *Id.* at 6–15. In 2021, Nevada passed Senate Bill 203 (SB 203), codified at NRS 11.215. This statute "eliminates any limitations period for claims for damages arising from sexual abuse that occurred when the plaintiff was under the age of 18." *Clark Cnty. Sch. Dist. v. Eighth Judicial Dist. Court in & for Cnty. of Clark*, 534 P.3d 137 (Nev. 2023). Cosby argues that this violates the special legislation clause of the Nevada Constitution, that it violates due process under both the United States and Nevada Constitutions, and that it violates the ex post facto clauses of both the United States and Nevada Constitutions. *See generally* ECF No. 16. He also argues that there is no civil cause of action under NRS 11.215 for sexual abuse and/or sexual exploitation of a minor. *Id.* at 4–5. Lasha responded to the motion and Cosby replied. *See* Opp'n, ECF No. 19; Reply, ECF No. 24. For the reasons explained below, I grant in part and deny in part the motion to dismiss. Cosby also appeals the magistrate judge's order denying the stipulation to

extend discovery deadlines (ECF No. 32). ECF No. 33. For the reasons herein, Cosby's objection to and appeal of the magistrate judge's order denying the stipulation is overruled in part.

I.    **Legal standard**

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

## II.    Discussion

This is not the first time that Cosby has filed an almost identical motion regarding a similar law in this district. In *Lotte-Lublin v. Cosby*, 2024 WL 4487189 (D. Nev. July 19, 2024) (*Lotte-Lublin I*), Magistrate Judge Daniel J. Albregts was presented the same arguments related to Nevada Senate Bill 129 (SB 129) and NRS 11.217, which eliminated any limitations period for claims for damages arising from sexual abuse that occurred when the plaintiff was *over* the age of eighteen. In his report and recommendation (R&R), he recommended denying the motion to dismiss to the extent it sought for the court to deem Senate Bill 129 invalid. *Lotte-Lublin I*, 2024 WL 4487189, at *3–11. District Judge Gloria M. Navarro adopted this part of the R&R. *Lotte-Lublin v. Cosby*, 2024 WL 4199872, at *3–7 (D. Nev. Sept. 16, 2024) (*Lotte-Lubin II*). Because the same arguments are made here, because the reasoning behind SB 129 and SB 203 is strikingly similar, and because I find the legal reasoning to be sound, I incorporate and adopt significant portions of the Judge Albregts R&R and Judge Navarro order into this order.

### A.   SB 203 does not violate the special legislation clause of the Nevada Constitution.

Cosby argues that the SB 203 was "impermissible special legislation" passed in violation of Article 4, Sections 20 and 21 of the Nevada Constitution. ECF No. 16 at 5. He asserts that SB 203 singles out and punishes individuals who have committed or been accused of sexual abuse or sexual exploitation, "as opposed to individuals who have committed any other heinous crime." *Id.* at 6. Cosby argues that there is no basis for treating victims of these acts differently than victims of any other crimes "that have the same life-long traumatic effects on victims." *Id.* Cosby acknowledges that Article 4, Section 20 of the Nevada Constitution only applies to criminal statutes, but "SB 203 is a special law designed to punish crimes" because it extends the statute of limitations for civil claims filed against people who has been convicted or accused of committing certain crimes. *Id.*

      Lasha responds by incorporating the courts' analyses in *Lotte-Lublin I* and *Lotte-Lublin II* into her motion. ECF No. 19 at 6–8. She also states that Article 4, Section 20 of the Nevada Constitution does not apply here because it relates only to laws "for the punishing of crimes and misdemeanors" and this is an entirely civil action. *Id.* at 8. Lasha explains that SB 203 does not only apply to those accused or convicted of crimes, but also acts not considered "crimes" that are listed under the definition of "sexual abuse," including "sado-masochistic abuse under NRS 201.262," which is defined but not criminalized. *Id.* at 8–9 (citing Nev. Rev. Stat. § 432B.100). Likewise, sexual exploitation is defined with reference to NRS 432B.110, which includes non-criminal conduct like "forcing, allowing or encouraging a child . . . [t]o view a pornographic film or literature." *Id.* at 9 (citing Nev. Rev. Stat. § 432B.110(2)). Further, Lasha argues that SB 203 is not a "special law" because it applies to the entire class of minor sexual abuse and exploitation survivors. *Id.* She asserts that Cosby misconstrues the relevant class as perpetrators of all "heinous" crimes or "crimes that have the same life-long traumatic effects on victims" such that the law treats perpetrators of sexual abuse or sexual exploitation—a subclass of heinous crimes—differently. *Id.* Lasha also argues that there are obvious distinctions between childhood sexual abuse and other "'heinous' crimes like murder or arson," including that survivors "are minors who, by reason of their age and vulnerability, are particularly less able to take actions to report the sexual crimes, are often terrorized, intimidated, shamed, guilt-ridden, and may feel that they would not be believed if they reported the crimes or pursued claims against the perpetrators." *Id.* at 10. She continues that childhood sexual abuse victims "may feel pressured to stay quiet so as not to disrupt family or social ties," that "[o]ten the perpetrator is close to the victim, so he or she lives in constant fear of the sexual abuser," and that for these reasons, unlike other "heinous" crimes, "disclosing childhood sexual abuse is a particularly terrifying prospect." *Id.*

In his reply, Cosby re-asserts that even if this is a civil statute, SB 203 only applies "to those who have been victims of specific crimes and only revives those claims against a person who has been convicted of the specific crimes that fall under sexual abuse or sexual exploitation or is accused of a specific crime described as either sexual abuse or sexual exploitation." ECF No. 24 at 2. Further, he argues that he is not suggesting that the relevant class is "all heinous crimes" but instead that SB 203 "is unconstitutional because it could have been made general to all victims who suffered memory repression from emotional and psychological trauma, or even to all victims and perpetrators of sexual crimes." *Id.* at 2–3.

The Nevada Constitution prohibits the Legislature from passing "local" and "special" laws." Nev. Const. art. 4, § 20. The Supreme Court of Nevada has explained the prohibition against local and special laws under Article 4, sections 20 and 21 as follows:

> [I]f a statute be either a special or local law, or both, and comes within any one or more of the cases enumerated in section 20, such statute is unconstitutional; if the statute be special or local, or both, but does not come within any of the cases enumerated in section 20, then its constitutionality depends upon whether a general law can be made applicable.

*Washoe Cnty. Water Conservation Dist. v. Beemer*, 45 P.2d 779, 782 (Nev. 1935). Of relevance here, section 20 applies to the "punishment of crimes and misdemeanors[.]" Nev. Const. art. 4, § 20. Cosby requests that I give this provision an expansive reading, allowing for it to include even civil provisions if they are "designed to punish crimes." ECF No. 16 at 6. Lasha's response—seeking a narrow reading but also pointing to non-criminal activity captured within SB 203—presents a compelling case that section 20 does not apply. However, I need not make such a determination because, even if section 20 did apply to SB 203, Cosby has still cannot meet his burden showing SB 203 is a special law.

As Judge Albregts explained in *Lotte-Lublin I*:

> The Nevada constitutional framers' purpose in adopting mandates proscribing local and special legislation was to "remedy an evil into which it was supposed the territorial legislature had fallen in the practice of passing local and special laws for the benefit of individuals instead of enacting laws of a general nature for the benefit of the public welfare." *Clean Water Coalition v. The M Resort, LLC*, 255 P.3d 247, 254 (Nev. 2011) (quoting *Evans v. Job*, 8 Nev. 322, 333 (Nev. 1873)).
>
> The Nevada Supreme Court has noted that "a law which applies only to an individual or to a number of individuals selected out of the class to which they belong, is a special and not a general law." *State v. California Min. Co.*, 15 Nev. 234, 249 (Nev. 1880). In other words, a law is considered "special legislation if it confers particular privileges or imposes peculiar disabilities, or burdensome conditions in the exercise of a common right; upon a class of persons arbitrarily selected, from the general body of *those who stand in precisely the same relation to the subject of the law.*" *City of Fernley v. State Dep't of Tax*, 366 P.3d 699, 708–09 (Nev. 2016) (quoting *Clean Water Coalition*, 255 P.3d at 254) (emphasis in *City of Fernley*). However, even then, special laws are not necessarily unconstitutional. *See Clean Water Coalition*, 255 P.3d at 312. A special law may be upheld if a general law could not have been made applicable. *Id.*

*Lotte-Lublin I*, 2024 WL 4487189, at *4. Presented with similar arguments from Cosby in that case, Judge Albregts concluded first that Cosby

> has not made the threshold showing that SB 129 is a special law because he has not shown that it applies to a subclass of individuals who otherwise stand in the same relation to the subject of the law. The Court is not convinced that perpetrators of "other heinous crimes," "interpersonal violence," or "sexual crimes"—as Defendant vaguely asserts—stand in precisely the same relation to the subject of SB 129. While Defendant argues that these other ill-defined crimes may result in similar trauma as sexual assault, the same could be said of many crimes. But, as Plaintiffs point out, the Nevada Legislature designed SB 129 to address the "uniquely intimate" crime of sexual assault, which often leaves its victims without the wherewithal to report the crime for many years. While victims of other crimes may also feel reluctant to report other "heinous," "interpersonal," and "sexual" crimes, Defendant has not shown how these other crimes are of the "uniquely intimate" nature such that their victims stand on precisely the same ground as sexual assault victims. He has also not shown that the perpetrators of these crimes stand on the same ground as perpetrators of other crimes. Ultimately, Defendant has not shown that SB 129 treats individuals who stand on precisely the same ground differently for arbitrary reasons. Defendant has not met his burden of showing that SB 129 is a special law.

*Id.*

1    Here, Cosby retreads the "heinous crimes" argument but instead of "interpersonal
2 violence," Cosby contends that the relevant class is crimes that resulted in "all victims who
3 suffered memory repression from emotional and psychological trauma" or "all victims and
4 perpetrators of sexual crimes." ECF No. 24 at 3. Although it is true that other crimes can create
5 serious trauma and result in memory suppression, and other sexual crimes can be particularly
6 traumatizing, Lasha explains that SB 203 was designed specifically for "minors who, by reason of
7 their age and vulnerability, are particularly less able to take actions to report the sexual crimes"
8 and who are more vulnerable to perpetrator and/or family pressure to stay quiet. ECF No. 19 at
9 10. Cosby has not shown how victims of sexual crimes or crimes that result in memory
10 repression stand on the same ground as minors exposed to sexual exploitation or sexual abuse.
11 He has also not shown that the perpetrators of these crimes stand on the same ground as
12 perpetrators of other crimes. Ultimately, Cosby has not shown that SB 203 treats individuals
13 who stand on precisely the same ground differently for arbitrary reasons. Thus, he has not met
14 his burden of showing that SB 203 is a special law.

15    In *Lotte-Lublin I*, Judge Albregts also noted that even if Cosby could show that SB 129 was
16 a special law, he had not shown that it was unconstitutional because he failed to show that "that
17 the Nevada Legislature could have come up with a general law that would impact the broader
18 class of persons Defendant so vaguely defines." 2024 WL 4487189, at *5. "It is hard to imagine
19 the Nevada Legislature expanding SB 129 to apply to such an ill-defined class as perpetrators
20 and victims of 'heinous,' 'interpersonal,' or even 'sexual' crimes. Indeed, whether a crime fits any
21 of these descriptions could vary depending on who you ask, not necessarily the crimes
22 themselves." *Id.* I find that the same is true for what could constitute a crime for which victims
23 "suffered memory repression from emotional and psychological trauma" and otherwise adopt the
24 logic propounded by Judge Albregts as to "sexual crime" or "heinous crimes." Thus, in regard to
25 SB 203, I find that the Nevada legislature could not have come up with a general law and deny
26 Cosby's motion to dismiss on this ground.

### B. SB 203 does not violate the Due Process clauses of the United States and Nevada Constitutions.

Cosby presents identical arguments to the ones he made in *Lotte-Lublin I*. He argues that SB 203 deprives him of his property right to the statute of limitations without due process of the United States and Nevada Constitutions. ECF No. 16 at 7. Just as he did in *Lotte-Lublin I*, Cosby cites a Utah Supreme Court decision for the proposition that reviving a time-barred claim violates constitutional due process principals. *Id.* (citing *Mitchell v. Roberts*, 469 P.3d 901, 908 (Utah 2020)). And although he acknowledges that the United States Supreme Court has concluded that statutes of limitations are "arbitrary enactments" and not "vested rights," Cosby nonetheless urges me to align with the dissent and find that the statute of limitations that SB 203 revived was a vested right of which he was deprived. *Id.* at 7–9 (citing *Campbell v. Holt*, 115 U.S. 620, 6299 (1885)).

In her response, Lasha quotes heavily from Judge Albregts and Judge Navarro's orders and points to *Campbell v. Holt* and its progeny to argue that a statute of limitations cannot create a vested right, and therefore SB 203 cannot have deprived Cosby of a property right without due process. ECF No. 19 at 10–14. She asserts that, not only does Cosby request that this court overturn precedent to which it is bound based on a Utah decision grounded in the interpretation and application of the Utah constitution and Utah case law, but also that Cosby fails to meet "the heavy burden appellants must bear to overcome the presumption of constitutional validity which every legislative enactment enjoys." *Id.* at 13–14 (quoting *Allen v. State*, 676 P.2d 792, 794 (Nev. 1984) and citing *Toombs v. Citizens' Bank of Waynesboro*, 281 U.S. 643, 647 (1930) ("In assailing the constitutionality of a state statute the burden rests upon appellant to establish that it infringes the constitutional guarantee which he invokes.")).

Like his reply in *Lotte-Lublin I*, Cosby acknowledges that the Supreme Court determined that statutes of limitations are not vested rights, and states that he will not argue the issue further. ECF No. 24 at 3; *see also Lotte-Lublin I*, 2024 WL 4487189, at *5 ("In reply Defendant

again acknowledges that the Supreme Court determined that statutes of limitations are not vested rights and states that he will not argue the issue further."). He also argues that Lasha fails to address his argument that SB 203 violates the due process clause of the Nevada Constitution, arguing that he has pointed to persuasive authority, including *Mitchell*, that the Supreme Court of Nevada would find that SB 203 violates the Nevada Constitution by reviving expired statutes of limitation and depriving him of a vested property right without due process of law. *Id.* at 3–4.

Relying on *Dekker/Perich/Sabatini Ltd. v. Eighth Judicial District Court*,[1] Judge Albregts opined in *Lotte-Lublin I* that Cosby did "not have a vested property right in the statute of limitations impacted by SB 129 under the United States Constitution[,]" and further noted he was not convinced that the "Nevada Supreme Court would find that statutes of limitations create property rights protected by the Nevada Constitution." *Lotte-Lublin I*, 2024 WL 4487189, at *5–6. I agree, so I adopt his reasoning and conclusions here. Indeed, Nevada's Due Process clause mirrors its federal counterpart: "[a]ll men are by Nature free and equal and have certain inalienable rights among which are those of enjoying and defending life and liberty; Acquiring, Possessing and Protecting property and pursuing and obtaining safety and happiness." Nev. Const. art. 1, § 1. *Dekker* shows that the Supreme Court of Nevada takes great care to consider federal laws when it comes to interpreting the scope of Nevada's procedural due process guarantees. *Dekker/Perich/Sabatini Ltd. v. Eighth Jud. Dist. Ct.*, 495 P.3d 519, 524 (Nev. 2021). *Lotte-Lublin I*'s evaluation of *Dekker* equally applies here, where SB 203, like SB 129, lengthened the statute of limitations for civil actions arising out of certain sexual crimes. I also reach the same conclusion that even if SB 203 did somehow create a vested property right to be free from plaintiff's sexual assault claims, SB 203 was justified by a rational legislative purpose such that it meets due process requirements. *Lotte-Lublin I*, 2024 WL 4487189, at *7.[2]

---

[1] 495 P.3d 519, 524 (Nev. 2021).
[2] Judge Navarro ultimately agreed with Judge Albregts's recommendation that Cosby did "not have a vested property right in SB 129's statute of limitations under the U.S. Constitution." *Lotte-Lublin II*, 2024 WL 4199872, at *5. Further, Judge Navarro disagreed with Cosby's argument that *Mitchell*, a Utah case, was applicable because "[t]he Nevada Supreme Court has not held the same, and there is no reason to

Finally,[3] and just like Judges Navarro and Albregts in *Lotte-Lublin I* and *Lotte-Lublin II*, I find no reason to adopt the novel reasoning in *Mitchell v. Roberts*, a single out-of-state opinion interpreting an out-of-state constitution and out-of-state laws. Therefore, Cosby's motion is denied as to his federal and state constitutional due process arguments.

### C. SB 203 does not violate the Ex Post Facto clauses of the United States and Nevada Constitutions.

Again, Cosby presents identical arguments to the ones he made in *Lotte-Lublin I*.[4] He argues that SB 203 violates the ex post facto clauses in the United States and Nevada Constitutions because it is effectively a retroactive law that is punitive in nature. ECF No. 16 at 10–16. Cosby asserts that, although the United States Supreme Court has held that the ex post facto clause applies only to criminal laws, this court should reconsider that holding based on secondary sources that argue that the ex post facto clause should apply to all retroactive laws raising the same concerns that the ex post facto clause was designed to address. *Id.* at 10–14. He also argues that, because SB 203 in effect punishes him, or at least "alters the legal rules of evidence, and receives less, or different testimony than the law required at the time of the commission of the offense, in order to convict the offender," it violates the ex post facto clause despite its civil nature. *Id.* at 15–16.

---

believe that it would." *Id.* at *5, n.6 ("It is not common for Nevada to rely upon Utah to answer questions of law. Historically, Nevada courts look to California law for guidance. *Zurich Am. Ins. Co. v. Aspen Specialty Ins. Co.*, 2021 WL 3489713 *3 (D. Nev. Aug. 6, 2021); *Eichacker v. Paul Revere Life Ins. Co.*, 354 F.3d 1142, 1145 (9th Cir. 2004). Additionally, Utah is not in the Ninth Circuit.").

[3] I also note that Cosby drops his U.S. Constitution claim in the same manner he did in *Lotte-Lublin I*, raising the question why he chose to make this argument again in the first place, when his motion (ECF No. 16) was filed months after he filed his reply in *Lotte-Lublin I*. *Compare* ECF No. 16 (filed Sept. 24, 2024), *with Lotte-Lublin I*, 2024 WL 4487189 (decided July 19, 2024 and discussing that in Cosby's reply he stated "that he will not argue the issue further"). Making an argument and then withdrawing it upon further reflection is not a problem. Doing so repeatedly, whether out of gamesmanship or inattention, wastes this court's—and opposing counsel's—time. I recognize that Cosby is defending multiple cases simultaneously, but this is his motion, and he is cautioned that such activity will not be tolerated in the future, and may subject him to sanctions, to include denial or striking of his motions.

[4] Because Cosby's motion is practically identical to that in *Lotte-Lublin*, my summary of the briefing largely reflects Judge Albregts's summary of the briefing in *Lotte-Lublin*. *See Lotte-Lublin I*, 2024 WL 4487189, at *7.

Lasha responds largely by citing to *Lotte-Lublin I* and *Lotte-Lublin II*, where, when presented with the same arguments, Judges Navarro and Albregts rejected Cosby's arguments because both federal and Nevada courts are consistent in holding that ex post facto laws apply only to retroactive criminal laws, not civil ones. ECF No. 19 at 15–22. She further argues that the law was designed to compensate victims—a civil remedy—and the effect of punishing perpetrators is ancillary. *Id.* at 22–23. Additionally, the mere fact that the plaintiffs, under the statute, can avail themselves of the common law remedy of punitive damages once their claims are revived does not mean that the law is subject to the ex post facto clause. *Id.* at 15–23. In reply, Cosby rests on his opening motion. ECF No. 24 at 4–5. Cosby presents no new or differing argument that would lead me to reach a different conclusion than reached by Judges Navarro and Albregts in *Lotte-Loubin I*[5] and *II*.[6]

Regarding Cosby's first argument—that SB 203 is retroactive—I agree entirely with Judge Albregts's conclusion that because the law does not increase penalties or change evidentiary burdens, precedent is clear under both the Nevada and U.S. Constitutions that their respective ex post facto clauses do not apply to SB 203 because it is a civil law. SB 203 affects only the statute of limitations on sexual exploitation and abuse of a minor; no penalties or evidentiary burdens have been altered.

However, as discussed in *Lotte-Lublin I*, it is possible for a civil law to be punitive and, in effect, still violate the ex post facto clauses of both U.S. and Nevada Constitutions. *See Smith v. Doe*, 538 U.S. 84, 92 (2003). As with SB 129, punitive damages are not mentioned in SB 203, nor does Lasha seek punitive damages under SB 203. *See* Compl., ECF No. 1 (seeking punitive damages under common law). And, in applying the first step of *Kansas v. Hendricks*, I reviewed the legislative history of SB 203 and conclude that its purpose was to compensate victims of

---

[5] 2024 WL 4487189, at *7–9.
[6] 2024 WL 4199872, at *6–7.

childhood sexual abuse and exploitation, not to punish alleged perpetrators.[7] The crafters of the bill acknowledge that victim compensation is not the only aim, though, but rather it was also created to "financially punish those bad actors, businesses, and other coconspirators who turn a blind eye and allow crimes against children to occur on their property or with their knowledge." *Revises Provisions Relating to Civil Actions Involving Certain Sexual Offenses: Hr'g on SB 203 before the Assemb. Comm. on the Judiciary*, 2021 Leg., 81st Sess. 19 (Nev. Apr. 28, 2021). However, from the repeated language about "businesses," it is evident that these retributory aims were directed toward aspects of SB 203 not relevant in this case.[8] Finding that the main intent of SB 203 was directed at supporting and compensating victims, and not at punishment, I turn to the seven *Kennedy* factors.

Regarding the first factor, like in *Lotte-Lublin*, Cosby concedes that the penalty does not involve an "affirmative disability or restraint." ECF No. 16 at 16; *Lotte-Lublin II*, 2024 WL 4199872, at *7. For the second factor, SB 203's punitive mechanism is monetary, and monetary penalties have not "historically been viewed as punishment." *Hudson v. United States*, 522 U.S. 93, 104 (1997). For the third factor, it is unclear whether a finding of scienter is *necessary* for a defendant to be liable. As Lasha argues—and is discussed above—there are several acts seemingly encompassed by SB 203 that do not qualify as crimes. However, even if scienter were required, "the *Smith* court made clear that this factor can be of little weight in the overall balancing test." *Lotte-Lublin II*, 2024 WL 4199872, at *7 (citing *Smith*, 538 U.S. at 87). For the fourth factor, Cosby merely asserts that "the purpose of the law is to promote retribution and deterrence" but only points to his potential punitive damages liability as the evidence of the punitive and deterring nature of the law. ECF No. 16 at 15–16. As discussed above, Lasha's claims for punitive damages are raised under common law, not SB 203, and the mere potential that he may face punitive damages does

---

[7] *See Revises Provisions Relating to Civil Actions Involving Certain Sexual Offenses: Hr'g on SB 203 before the Assemb. Comm. on the Judiciary*, 2021 Leg., 81st Sess. 19 (Nev. Apr. 28, 2021) (representative from the Nevada Justice Association explaining that "[t]he intent of this bill is to protect children in Nevada . . . .").

[8] There are several parts of SB 203 not relevant here, including provisions about exploitation or abuse on certain properties and businesses like hotels and motels. *See* S.B. 203, 2021 Leg., 81st Sess. (Nev. 2021).

not make SB 203 punitive. Further, like Judge Albregts, I adopt the reasoning in *Bernard v. Cosby* that monetary damages themselves should not be considered punishment even if it might "promote[ ] the traditional ends of punishment" and that SB 203 is of minimal deterrent value because "it applies only to a narrow range of previously extinguished claims arising from past conduct" 648 F. Supp. 3d 558, 573 (D.N.J. 2023) (quoting *Nat'l Taxpayers Union v. United States SSA*, 302 F. App'x 115, 120–21 (3d Cir. 2008)); *Lotte-Lublin I*, 2024 WL 4487189, at *9 (adopting *Bernard* court's reasoning). For the fifth factor, it does appear that SB 203 applies to at least certain conduct that already constitutes a crime, but it may also apply to non-criminal conduct as argued by Lasha. Regarding the sixth factor, Cosby argues that the alternative purpose of SB 203 was punishment and deterrence. ECF No. 16 at 15. However, his only support for this is Lasha's ability to seek common law punitive damages. *Id.* at 16. For the reasons already described, this is not sufficient. As to the seventh factor, once again, Cosby has not presented a case to support that there were other aims for SB 203, and therefore I do not find that the supposedly punitive nature of SB 203 "appears excessive in relation to the alternative purpose assigned." *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963).

At most, only a few of the seven factors weigh in favor of finding that SB 203 was intended as a criminal statute or is so punitive as to negate its nonpunitive purpose for purposes of the prohibition on ex post facto laws. However, even for the factors that *do* potentially weigh in Cosby's favor, he has not provided anything close to the "clearest proof" that this is the case. *See Smith*, 538 U.S. at 97. Therefore, I deny Cosby's motion to dismiss the complaint on the grounds that SB 203 violates the U.S. and Nevada Constitutions' prohibition on ex post facto laws.

**D.  NRS 11.215 does not create a civil cause of action for sexual abuse of a minor.**

Cosby argues that NRS 11.215 does not create a private cause of action to sue for "sexual abuse and exploitation of a minor." ECF No. 16 at 4. He explains that in a plain reading of the statute, the bill reflects the legislature's "intent to abolish the statute of limitations for 'an action

13

to recover damages' that arises from a sexual abuse or sexual exploitation of a minor, which is further defined in the Nevada Revised Statutes." *Id.* He states that Lasha's "battery, assault, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment claims are appropriate common law torts that may arise from a sexual assault, but there simply is no common law tort known as 'sexual assault' . . . ." *Id.* In support, he points out that in *Lotte-Lublin*, the plaintiffs unsuccessfully invoked NRS 11.217 as the basis for an independent "sexual assault" claim. *Id.* at 4–5. As Judge Albregts stated in *Lotte-Lublin I*, "the Court has not found any authority establishing sexual assault as a private cause of action under Nevada law." *Id.* at 5 (quoting *Lotte-Lublin I*, 2024 WL 4487189, at *2). Cosby maintains that the district court agreed with this finding. *Id.* (*Lotte-Lublin II*, 2024 WL 4199872 (adopting the R&R)).[9]

In response, Lasha points to the sentence that preceded Judge Albregts's ultimate conclusion: "Plaintiffs do not respond to this argument, constituting their consent to the Court granting Defendant's requested relief." ECF No. 19 at 23 (quoting *Lotte-Lublin I*, 2024 WL 4487189, at *2). Here, she argues that there is an express private cause of action under § 11.215: "[a]n action to recover damages for an injury to a person arising from the sexual abuse or sexual exploitation of the plaintiff which occurred when the plaintiff was less than 18 years of age *may be commenced against the alleged perpetrator.*" *Id.* at 23–24 (quoting Nev. Rev. Stat. § 11.215(1) (emphasis added in opp'n)). Further, the statute also establishes that such an action may be filed "at any time after the sexual abuse or sexual exploitation occurred." *Id.* at 24 (quoting Nev. Rev. Stat. § 11.215(1)). She concludes, "[i]f there were no private cause of action, establishing that such an action may be commenced at any time would not make much sense." *Id.*

In his reply, Cosby asserts that NRS 11.215 "is contained within Chapter 11 of the Nevada Revised Statutes which is titled 'Limitation of Actions.' This chapter governs the time to bring a

---

[9] I note that Judge Navarro never mentioned the private cause of action question because it was not subject to an objection. *See Lotte-Lublin II*, 2024 WL 4199872.

14

given action, it does not create substantive rights." ECF No. 24 at 1. He insists that the statute lacks the express language required to create a private cause of action. *Id.* at 1–2 (quoting *Richardson Constr., Inc. v. Clark Cnty. Sch. Dist.*, 156 P.3d 21, 23 (Nev. 2007) ("[W]hen a statute does not expressly provide for a private cause of action, the absence of such a provision suggests that the Legislature did not intend for the statute to be enforced through a private cause of action.").

        Under a plain reading of the NRS 11.215, there is no private cause of action under the statute. I agree that *Lotte-Lublin* bears little on the present case because, unlike the plaintiffs there, Lasha has raised credible challenges to Cosby's arguments. *See Lotte-Lublin I*, 2024 WL 4487189, at *2 ("Plaintiffs do not respond to this argument, constituting their consent to the Court granting Defendant's requested relief."). Nonetheless, there is no indication from the legislature that NRS 11.215 was intended to confer a new right of action for sexual abuse and exploitation of minors. As Lasha argues, the legislature specified that "[a]n action to recover damages for an injury to a person arising from the sexual abuse or sexual exploitation of the plaintiff which occurred when the plaintiff was less than 18 years of age may be commenced against the alleged perpetrator." Nev. Rev. Stat. § 11.215(1). Key to this provision is the phrase "arising from," which points not to an entirely new action but to actions that may be brought that "arise from" child sexual abuse or exploitation. Lasha's own case is exemplary: among her claims are assault, battery, false imprisonment, and intentional and negligent infliction of emotional distress. Compl., ECF No. 1. Each of these claims *arises from* alleged sexual exploitation or abuse that occurred when she was a minor. Lasha argues that not finding a separate cause of action would render the provision "at any time after the sexual abuse or sexual exploitation occurred" nonsensical, but this is the same phrase upon which the remainder of her claims lie. For example, Lasha's battery claim, arising out of an encounter she alleges constituted sexual abuse of a minor, was revived by SB 203, which allows her to file it "at any time after the sexual abuse or sexual exploitation occurred." Nev. Rev. Stat. § 11.215. What SB 203 did is obvious from its language: SB 203 removed the statute of limitations on actions brought under other torts that

15

constitute child sexual abuse and/or exploitation, defined under the statute. Thus, I find that NRS 11.215 does not give rise to any new causes of action, and I grant Cosby's motion as to this issue, and dismiss Lasha's first claim.

**E. Cosby's objection to the magistrate judge's order is overruled in part.**

On November 13, 2024, Magistrate Judge Nancy J. Koppe denied (ECF No. 29) the parties' stipulated discovery plan (ECF No. 28) that would have reset the following deadlines:

(1) Initial disclosures: November 22, 2024, to December 6, 2024

(2) Discovery cutoff: March 24, 2025, to October 31, 2025

(3) Pleading amendments and added parties: December 24, 2024, to August 1, 2025

(4) Fed. R. Civ. P. 26(a)(2) expert disclosures: January 23, 2025, to September 1, 2025

(5) Rebuttal expert disclosures: February 24, 2025, to October 1, 2025

(6) Dispositive motions: April 23, 2025, to December 1, 2025

(7) Join pretrial order: May 23, 2025, to December 31, 2025 (or thirty days after resolution of dispositive motions)

ECF No. 28 at 2–4; ECF No. 29 at 1–2. Judge Koppe explained that the pendency of the motion to dismiss was not sufficient reason to move the deadlines, among other reasons. ECF No. 29 at 1.

On November 22, 2024, Cosby filed a stipulation for extension of time, seeking the same extensions and providing a detailed explanation for why the extensions were necessary, including that Cosby is defending fourteen lawsuits in different jurisdictions, is nearly ninety years old, and collecting evidence for a forty-year-old case takes additional time. *See generally* ECF No. 31. Judge Koppe denied the stipulation, construing it as a motion for reconsideration of her denial of the stipulated discovery plan and stating that the statement lacked sufficient specificity and that the request is grounded in Cosby's counsel's failure to maintain a manageable caseload. *See generally* Order, ECF No. 32. Cosby filed this objection/appeal of the order, explaining that Judge Koppe's order was clearly erroneous because it did not consider

16

significant portions of the stipulation that presented good cause for the requested extensions. ECF No. 33 at 4–6.

Since the objection was filed, Cosby has sought (ECF No. 34) and been granted (ECF No. 37) some additional time. Specifically, Judge Koppe set the following deadlines in her May 1, 2025 order:

(1) Initial disclosures: closed

(2) Discovery cutoff: May 23, 2025

(3) Pleading amendments and added parties: closed

(4) Fed. R. Civ. P. 26(a)(2) expert disclosures: closed

(5) Rebuttal expert disclosures: closed

(6) Dispositive motions: June 23, 2025

(7) Join pretrial order: July 23, 2025 (or thirty days after resolution of dispositive motions)

ECF No. 37 at 3.

Magistrate judges may "hear and determine any pretrial matter pending before the court," with some exceptions, and "[a] judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). "[R]eview under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1014 (9th Cir. 1997). "And '[a]n order is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citation omitted). "Pretrial orders of a magistrate under 636(b)(1)(A) are reviewable under the 'clearly erroneous and contrary to law' standard; they are not subject to *de novo* determination[.]" *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (quoting *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. 1981)). "The reviewing

court may not simply substitute its judgment for that of the deciding court." *Id.* Under this district's local rules, a party may appeal a magistrate judge's ruling on a pretrial matter by filing written objections, and the opposing party may respond. LR IB 3-1(a); Fed. R. Civ. P. 72(a). And "[t]he district judge may affirm, reverse, or modify, in whole or in part, the magistrate judge's order." LR IB 3-1(b).

I find that there was no clear error in the order set out by Judge Koppe on the stipulation, but ultimately overrule the objection only in part. From a review of the order, it is clear that Judge Koppe indeed considered the arguments laid out in the stipulation and nonetheless found that the crux of Cosby's issues arise from an overexertion of counsel's resources, a conclusion for which I do not find clear error. However, I also recognize that part of the issue for Cosby has been this court's delay in adjudicating the questions raised in the motion to dismiss. For this reason only, I overrule the objection and permit the parties an extra five weeks to submit their dispositive motions. Accordingly, the dispositive motions deadline is extended from June 23, 2025, to July 31, 2025. Should the parties seek additional time for this deadline or any other, they must file a request that complies with the local and federal rules, as set forth in ECF No. 37.

### III.    Conclusion

IT IS THEREFORE ORDERED that the defendant's motion to dismiss **[ECF No. 16] is GRANTED in part and DENIED in part**, as set forth in this order.

IT IS FURTHER ORDERED that the defendant's objection to and appeal of the magistrate judge's order denying the stipulated discovery plan **[ECF No. 33] is OVERRULED in part**. The magistrate judge's order **[ECF No. 32] is AFFIRMED in part**, as set forth in this order. The deadline for dispositive motions is extended to July 31, 2025.

Dated: June 20, 2025

_____
Cristina D. Silva
United States District Judge